**Peter M. ("Mac") Lacy (OSB # 013223)**
Oregon Natural Desert Association
917 SW Oak Street, Suite 419
Portland, OR 97205
(503) 525-0193
lacy@onda.org

Attorney for Applicant in Intervention-Defendant


## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## MEDFORD DIVISION


**CAHILL RANCHES, INC.,**

        Plaintiff,

    v.

**BUREAU OF LAND MANAGEMENT,**

        Defendant,

   and

**OREGON NATURAL DESERT ASSOCIATION,**

        Applicant in
        Intervention/Defendant

_____

No. 1:17-cv-960-CL

**MOTION TO INTERVENE**


## <u>MOTION TO INTERVENE</u>

The Oregon Natural Desert Association ("ONDA"), a non-profit conservation

organization, moves for intervention as of right on behalf of Federal defendant, the U.S. Bureau

of Land Management ("BLM"), pursuant to Federal Rule of Civil Procedure 24(a). In the

alternative, ONDA moves for permissive intervention pursuant to Federal Rule of Civil

Procedure 24(b). Pursuant to Local Rule 7-1(a)(1), the undersigned certifies that counsel for

ONDA conferred with counsel for the other parties. Plaintiff Cahill Ranches, Inc., anticipates

that it will not oppose this motion, but reserves its right to oppose or otherwise respond to the

motion after it has had a chance to review ONDA's motion and supporting papers. ONDA also

notes that since this case is currently stayed, plaintiff has suggested, and ONDA would not

oppose, that the Court adopt a briefing schedule on the motion following submission of the

parties' joint status report due January 29, 2018, in which the parties will propose a briefing

schedule to resolve the motion intervene. Counsel for Federal defendant indicates that BLM

takes no position on the motion to intervene at this time and reserves the right to respond after it

is filed. BLM also joins in the request to propose a briefing schedule on the motion to intervene,

if necessary, in the January 29, 2018 status report.

In support of this motion, ONDA provides the following memorandum, as well as the

Declaration of Dr. Craig Miller, M.D., and the Declaration of Dan Morse. ONDA also has

concurrently filed its proposed Answer to the plaintiff's Complaint as an exhibit, pursuant to

Federal Rule of Civil Procedure 24(c). Because ONDA meets the four requirements for

intervention as of right under Rule 24(a) or, alternatively, the broad standard for permissive

intervention under Rule 24(b), ONDA respectfully requests the Court to grant leave to intervene

as a defendant in this case.

## **INTRODUCTION**

Greater sage-grouse (*Centrocerus urophasianus*) are a symbol of the Intermountain West.

But sage-grouse are in trouble. As many as 16 million of these iconic birds once ranged across

297 million acres of sagebrush grasslands, an area of western North America so vast it is called

the "sagebrush sea." But over the past 200 years, agriculture and development have reduced sage-grouse range by nearly half, and sage-grouse populations have steadily declined. In 2010, the Department of the Interior's expert wildlife agency, the U.S. Fish & Wildlife Service, determined that the Greater sage-grouse is "warranted" for protection under the Endangered Species Act, 16 U.S.C. §§ 1531–43. 12-Month Findings for Petitions to List the Greater Sage-Grouse (Centrocerus urophasianus) as Threatened or Endangered, 75 Fed. Reg. 13,910 (Mar. 23, 2010); *see also Or. Natural Desert Ass'n v. Jewell*, 840 F.3d 562, 565–66 (9th Cir. 2016); *W. Watersheds Proj. v. Salazar*, 843 F. Supp. 2d 1105, 1111–12 (D. Idaho 2012) (descriptions of sage-grouse life history and habitat characteristics). Scientists believe that the fate of the sage-grouse may be a harbinger for about 350 other species dependent upon the West's sagebrush habitats.

In 2015, BLM unveiled a series of sweeping plans to protect the Greater sage-grouse and its sagebrush habitats on public lands across the West, including Oregon, which provides about 20% of this iconic and imperiled bird's remaining range. The new federal plans represent an important step forward for sage-grouse conservation. This is clear from the steady stream of lawsuits filed over the course of the past two years by industry groups and state and county governments hostile to the conservation of the grouse and its remaining habitats.[1] In all of these

---

[1] *See W. Exploration, LLC v. U.S. Dep't of the Interior*, No. 3:15-cv-491 (D. Nev. filed Sept. 23, 2015); *Otter v. Jewell*, No. 1:15-cv-1566 (D.D.C. filed Sept. 25, 2015); *Wyo. Stock Growers Ass'n v. U.S. Dep't of Interior*, No. 2:15-cv-181 (D. Wyo. filed Oct. 14, 2015) and *Wyo. Coalition of Local Gov'ts v. U.S. Dep't of Interior*, No. 2:16-cv-41 (D. Wyo. filed Mar. 1, 2016); *Herbert v. Jewell*, No. 2:16-cv-101 (D. Utah filed Feb. 4, 2016); *Am. Exploration & Mining Ass'n v. U.S. Dep't of the Interior*, No. 16-cv-737 (D.D.C. filed Apr. 19, 2016); *W. Energy Alliance v. U.S. Dep't of Interior*, No. 16-cv-112 (D.N.D. filed May 12, 2016); *Harney Soil & Water Conservation Dist. v. U.S. Dep't of the Interior*, No. 1:16-cv-2400-EGS (D.D.C. filed Dec. 7, 2016).

(continued…)

lawsuits, as is the case here, the plaintiffs ask the courts to enjoin implementation of and vacate the BLM's sage-grouse plans—which would leave the bird unprotected save for scattershot, inconsistent, and generally far weaker state plans.

For some time, Oregon was the only state whose Greater sage-grouse Approved Resource Management Plan Amendment ("ARMPA") was not subject to any direct challenge in federal court. Among other reasons, BLM's sage-grouse plan for Oregon resulted in large measure from the collaborative work undertaken by the Governor of Oregon's Sage Grouse Conservation Partnership ("SageCon"). *See* Miller Decl. ¶ 22. Expressly supporting community sustainability in central and eastern Oregon into the future, the SageCon group sought to coordinate federal, state, and local efforts to address the multiple threats to sage-grouse across the eastern Oregon sagebrush landscape. *Id.* A broad cross-section of stakeholders including state and local governments, ranchers, landowners, conservation groups and others, worked to create a plan that most felt was an important first step in the difficult task of saving the Greater sage-grouse from extinction. *Id.*; *see also* Morse Decl., Attach. A at 5–7 (describing the *Oregon Sage-Grouse Action Plan* and the SageCon process).

As Oregon's only conservation organization dedicated exclusively to protecting eastern Oregon's native deserts, ONDA has long been committed to addressing the plight of the Greater

---

The U.S. District Court for the District of Columbia dismissed *Otter v. Jewell* for lack of standing by order dated Jan. 5, 2017 (D.D.C. No. 15-1566, Dkt # 67). While that court and the District Court for the District of Idaho denied government motions to sever and transfer claims in some of the cases, the District Court for the District of North Dakota severed and transferred to other courts (Nevada, Utah, and D.C. District Courts) all parts of the Western Energy Alliance's complaint that were not related to North Dakota. *See W. Energy Alliance*, No. 16-112, Order (Dkt # 48) (Dec. 19, 2016). All of these cases are now stayed while the Department of the Interior embarks on a new round of environmental review. *See* Notice of Intent To Amend Land Use Plans Regarding Greater Sage-Grouse Conservation and Prepare Associated Environmental Impact Statements or Environmental Assessments, 82 Fed. Reg. 47248 (Oct. 11, 2017) (also available at #18-3).

sage-grouse. *See* Miller Decl. ¶¶ 9, 13–16. ONDA is concerned that if the Court were to grant

Cahill's requested relief and vacate or otherwise undermine BLM's sage-grouse plan for Oregon,

the Greater sage-grouse and the vast, sagebrush habitats it relies upon for survival from one year

to the next would be vulnerable to extirpation given the urgency of this imperiled bird's

conservation status. *See* Miller Decl. ¶¶ 23–26.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 24(a),

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an
> interest relating to the property or transaction that is the subject of the action, and
> is so situated that disposing of the action may as a practical matter impair or
> impede the movant's ability to protect its interest, unless existing parties
> adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). The Ninth Circuit applies a four-part test to evaluate motions to

intervene:  "(1) the intervention application is timely; (2) the applicant has a significant

protectable interest relating to the property or transaction that is the subject of the action; (3) the

disposition of the action may, as a practical matter, impair or impede the applicant's ability to

protect its interest; and (4) the existing parties may not adequately represent the applicant's

interest." *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (internal quotation marks and

citation omitted); *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th

Cir. 2011). The "requirements are broadly interpreted in favor of intervention." *Prete*, 438 F.3d

at 954. "In addition to mandating broad construction, our review is guided primarily by practical

considerations, not technical distinctions." *Sw. Ctr. for Biol. Diversity v. Berg*, 268 F.3d 810, 818

(9th Cir. 2001).

Under Federal Rule of Civil Procedure 24(b), this Court may grant permissive

intervention for anyone who files a timely motion and "has a claim or defense that shares with

the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising its

discretion to permit intervention, "the court must consider whether the intervention will unduly

delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). An

applicant must demonstrate three requirements for permissive intervention: (1) an independent

ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between

the applicant's claim or defense and the main action. *Freedom from Religion Found., Inc. v.*

*Geithner*, 644 F.3d 836, 843 (9th Cir. 2011).

## ARGUMENT

### I.      ONDA IS ENTITLED TO INTERVENE AS OF RIGHT

#### A.  ONDA's Motion is Timely

In determining timeliness, this Court considers:  "1) the stage of the proceeding at which an

applicant seeks to intervene; 2) the prejudice to other parties; and 3) the reason for and length of the

delay." *Cnty. of Orange v. Air Cal.*, 799 F.2d 535, 537 (9th Cir. 1986). ONDA has been monitoring

all of the anti-grouse cases, including this one. On April 17, 2017, ONDA moved to intervene in

the other Oregon-focused case, *Harney Soil & Water Conservation Dist. v. U.S. Dep't of the*

*Interior*, which was filed in the District Court for the District of Columbia. Earlier this month,

ONDA submitted comments to the Department of the Interior in response to the agency's Notice

of Intent to amend or revise BLM's sage-grouse plans including the Oregon ARMPA. *See* Morse

Decl., Attach. A.

Here, ONDA's motion to intervene is timely because this case is in its early stages. The

case was filed on June 19, 2017 (#1). The Court granted the parties' joint motions, on July 28

(#12) and again on October 30 (#18), seeking a stay of all litigation deadlines (#13, #19), and

BLM has not yet filed an Answer. Thus, the Court has not yet set deadlines for production of the

administrative record or filing dispositive motions. Granting this motion will not delay the case.

Because granting ONDA's motion to intervene will not delay the case nor prejudice any party in the case, this motion is timely.

### B.  ONDA Has an Interest in the Subject Matter of this Action

An applicant for intervention must possess an interest relating to the property or transaction that is the subject matter of the litigation. "Whether an applicant for intervention as of right demonstrates sufficient interest in an action is a practical, threshold inquiry, and no specific legal or equitable interest need be established." *Citizens for Balanced Use*, 647 F.3d at 897 (internal quotations omitted). To demonstrate a significant protectable interest, "an applicant must establish that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Id.*

The plaintiff in this case, Cahill Ranches, challenges BLM's Record of Decision and ARMPA for the Great Basin Region, Including the Greater Sage-Grouse Sub-Regions of Idaho and Southwestern Montana, Nevada and Northeastern California, Oregon, and Utah, 80 Fed. Reg. 57,633 (Sept. 24, 2015), and in particular the ARMPA for Oregon. Complaint ¶¶ 2, 39–41, A–B. Cahill seeks an order from the Court that "the Oregon Sub-Regional Greater Sage Grouse Resource Management Plan Amendment and Record of Decision violates" multiple federal laws, and an order that "[v]acates the Oregon Sub-regional RMPA and [Record of Decision] as applied to the Sucker Creek pasture of the Rahilly-Gravelly Allotment." Complaint ¶¶ A–B. If Cahill's prayer for relief is granted, ONDA would suffer an injury-in-fact due to the resumption of damaging grazing in essential sage-grouse habitat, the potential snowball effect that would encourage other, similar anti-grouse lawsuits by those seeking to preserve or increase otherwise unsustainable grazing practices in critical sage-grouse habitats, and the loss of some or all of the Oregon ARMPA that is necessary, along with the other sub-regional plans, to manage and conserve sage-grouse habitat in a

consistent and meaningful manner. *See* Miller Decl. ¶¶ 25–41; *see also* Morse Decl. ¶ 4 & Attach. A at 3–16.

ONDA and its members have a keen interest in the challenged plan that protects Greater sage-grouse and the lands that these imperiled birds require for survival in Oregon. *See* Miller Decl. ¶¶ 15–24. Oregon sage-grouse populations and sagebrush habitats comprise nearly 20% of the range wide distribution of the species. *Id.* ¶ 19. For most of its 30 years since it was founded in 1987, and particularly over the course of the past decade, ONDA has worked to conserve and protect sage-grouse populations and the sagebrush steppe landscapes that this iconic bird needs to survive. *See id.* ¶¶ 15–24. For members like Dr. Miller, the sage-grouse and the vast sagebrush ecosystem in which it lives are deeply important parts of what he treasures about the public lands throughout eastern Oregon's high desert, including in the Hart-Sheldon region in Lake County. *See id.* ¶¶ 3, 5–6, 8–9; *see also* https://youtu.be/cLnbiTkj1TQ (last visited Dec. 20, 2017) (video of the renowned sage-grouse courtship dance where male grouse strut across breeding sites, called "leks," in the pre-dawn hours of the early spring).

The sagebrush ecosystem on which sage-grouse depend is among the most vulnerable in North America, with loss and fragmentation of sagebrush threatening the bird's prospects for survival. 12-Month Findings for Petitions to List the Greater Sage-Grouse (*Centrocerus urophasianus*) as Threatened or Endangered, 75 Fed. Reg. 13,910, 13,916, 13,923, 13,957 (Mar. 23, 2010). The sage-grouse is in danger of extinction from fragmentation and loss of its sagebrush habitat and increasing isolation of populations due to human activities, including livestock grazing, energy development and transmission, and ever-expanding motorized transportation networks. 12-Month Findings on a Petition to List Greater Sage-Grouse (*Centrocerus urophasianus*) as an Endangered or Threatened Species, 80 Fed. Reg. 59,858, 59,871, 59,887 (Oct. 2, 2015).

ONDA, its staff, and its members specifically advocated "for a strong, science-based, landscape-level approach to conserving the Greater sage-grouse and the sagebrush ecosystem and for timely completion and implementation of the [Oregon ARMPA]." Miller Decl. ¶ 22. As noted above, BLM's sage-grouse plan for Oregon resulted in large measure from collaborative work undertaken by the Governor of Oregon's "Sage Grouse Conservation Partnership." *Id*. ¶ 23. That partnership included a "broad cross-section of stakeholders including state and local governments, ranchers, landowners, conservation groups, and others." *Id*. As a leader in sagebrush conservation issues in Oregon, and the only conservation group dedicated exclusively to protecting and restoring Oregon's native high deserts, ONDA participated extensively in that process. *See id*. ¶¶ 10, 23.

In ONDA's view, the federal sage-grouse plans, including the Oregon ARMPA, set up a consistent framework for conservation of sage-grouse habitat across the West. *Id*. ¶ 24. The measures set out in the ARMPA will also help protect "important roadless areas and wildlands that ONDA has worked for decades to defend—places essential not just for their human environmental values but also for preserving unfragmented sagebrush landscapes critical to the survival of the sage-grouse." *Id*. Based on ONDA's long-time advocacy and leadership on sage-grouse issues in Oregon, its interest in the kind of science-based, landscape-level conservation in the Oregon ARMPA, and its keen interest in protecting the Greater sage-grouse and its habitat in Oregon, ONDA meets the "interest" test for intervention in this case. *See also Friends of the Earth Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) ("environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity") (citations omitted).

9

**C.  ONDA's Interests May Be Impaired by This Litigation**

In determining whether an applicant's interests will be impaired, the Ninth Circuit has explained that "if an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Berg*, 268 F.3d at 822 (internal quotations omitted). This inquiry "'is not limited to consequences of a strictly legal nature.'" *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir 1995) (quoting *Natural Res. Def. Council v. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978)).

Cahill challenges BLM's sage-grouse ARMPA for Oregon, which ONDA sought to get approved by the Department of the Interior. Setting aside the plan would harm ONDA's interests by frustrating years of effort working to get this plan in place to begin the long and demanding task of recovering the sage-grouse and its sagebrush habitat in Oregon and beyond. *See, e.g.*, *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1398 (9th Cir. 1995) (decision to remove species from endangered species list impaired conservation groups' interest in preservation); *Sagebrush Rebellion v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) ("An adverse decision in this suit would impair the society's interest in the preservation of birds and their habitats"); *see also* Morse Decl., ¶ 4 & Attach. A at 2–3, 7–8 (describing efforts with Federal, State, and non-government partners to get plan approved and then allow time for plan to be implemented in order to gauge its effectiveness).

Ensuring the survival and recovery of the Greater sage-grouse has been at the core of ONDA's mission and on-the-ground work for years. *See* Miller Decl. ¶¶ 15, 20–24. As. Dr. Miller explains, "[i]nvalidating or otherwise interfering with implementation of the plan would increase the risk to the Greater sage-grouse that led the U.S. Fish & Wildlife Service to

determine that the species warranted protection under the Endangered Species Act absent changes to land use planning and management." *Id*. ¶ 25 (referencing 75 Fed. Reg. 13,910). "Halting implementation of the plan would also prevent conservation of habitat for hundreds of other species that rely upon these same lands." *Id*. "As a result," continues Dr. Miller, "my use and enjoyment of these public lands, and that of my fellow ONDA members, would be at risk." *Id*. Because disposition of this action may, as a practical matter, impair ONDA's ability to protect its interests, ONDA satisfies the Rule 24(a) impairment-of-interest requirement.

### D.  Existing Parties Will Not Adequately Represent ONDA's Interests

The Supreme Court has explained that the adequate representation "requirement of [Rule 24(a)] is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *see also Forest Conservation Council*, 66 F.3d at 1498 ("minimal" requirement it "to show that representation *may* be inadequate"). "A proposed intervenor is adequately represented only if "(1) the interests of the existing parties are such that they would undoubtedly make all of the non-party's arguments; (2) the existing parties are capable of and willing to make such arguments; and (3) the non-party would offer no necessary element to the proceeding that existing parties would neglect." *Sw. Ctr. for Biol. Diversity v. Babbitt*, 150 F.3d 1152, 1153–54 (9th Cir. 1998).

Here, Cahill's interests are directly adverse to those of ONDA. ONDA's interests overlap with BLM's interests to an extent. However, the government could take positions not fully protective of the sage-grouse due to its duty to protect all interests and to follow a variety of environmental and natural resource laws that govern not only imperiled species but also multiple-use management of the public lands. For example, on June 7, 2017, Secretary of the Interior Ryan Zinke issued Secretarial Order 3353, "Greater Sage-Grouse Conservation and

Cooperation with Western States," directing a "review" of the federal sage-grouse plans including the Oregon ARMPA at issue in this case. On August 4, 2017 the Department of the Interior Sage-Grouse Review Team issued its "Report in Response to Secretarial Order 3353." *Available at* https://www.doi.gov/pressreleases/secretary-interior-ryan-zinke-statement-sage-grouse-report (last visited Dec. 20, 2017). The Report identified a series of short- and long-term options to generally weaken or remove protections or processes established in the 2015 plans. And on October 11, 2017, BLM published its Notice of Intent to undertake re-scoping and amend land use plans across the West regarding Greater sage-grouse conservation. 82 Fed. Reg. at 47,248.

On December 1, 2017, ONDA submitted extensive comments expressing concern that "if the Department of the Interior rolls back the vital protections established in the ARMPA, the Greater sage-grouse and the vast, sagebrush habitats it relies upon for survival from one year to the next will be vulnerable to extirpation given the urgency of the bird's conservation status." *See* Morse Decl., Attach. A at 2. ONDA urged the Department of the Interior not to amend the ARMPA or, if the plan amendments *are* revised or amended, to insure that they provide greater, not lesser, protection for the sage-grouse. Morse Decl. ¶ 4 & Attach. A at 3; *see also* Miller Decl. ¶ 23 (explaining "collaborative" effort that went into crafting the Oregon ARMPA, and that "[a] broad cross-section of stakeholders including state and local governments, ranchers, landowners, conservation groups, and others, participated in this process and largely felt that the plan was a vital first step in the difficult task of saving the Greater sage-grouse from extinction."); *People for the Ethical Treatment of Animals v. Babbitt*, 151 F.R.D. 6 (D.D.C. 1993) (government's mandate to design and enforce an entire regulatory system precludes it from adequately representing one party's interest in it); *Dimond v. D.C.*, 792 F.2d 179, 192–93 (D.C. Cir. 1986)

(finding an agency "would be shirking its duty were it to advance [an individual's] narrower interest at the expense of its representation of the general public interest").

To aid the Court and to promote judicial economy, ONDA proposes that it file its summary judgment briefs one week after BLM's in order to highlight any differences between ONDA's and the government's positions and to avoid duplicative briefing.

## II.    ONDA IS ENTITLED TO PERMISSIVE INTERVENTION

Alternatively, the Court may authorize permissive intervention under Rule 24(b) because ONDA has filed a timely motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). ONDA seeks to defend BLM's sage-grouse ARMPA for Oregon on the basis of the Department of the Interior's determination, through its U.S. Fish and Wildlife Service, that the implementation of the plan, coupled with the other BLM sage-grouse plans for rest of the species's vast range in the West, is essential to avoiding the necessity of placing the Greater sage-grouse on the endangered species list due to continued fragmentation and loss of sagebrush habitat. ONDA also will assert that interference with, or vacatur of, the Oregon ARMPA will undermine the discretion and authority of the BLM to conserve the public lands, including the important sagebrush habitat in the Sucker Creek area, by limiting other uses and requiring proactive conservation and mitigation. *See* Miller Decl. ¶¶ 25–31.

ONDA seeks to defend the legality of the Oregon ARMPA and does not seek to file counter or cross claims. *See* ONDA [Proposed] Answer (filed herewith). BLM has not yet filed its answer and the Court has not yet set any deadlines for filing of the administrative record or dispositive motions. Through its briefing and participation in this case, ONDA would seek to assist this Court by highlighting ONDA's unique interests in sage-grouse conservation in Oregon

and in seeing BLM's plan upheld, and would avoid duplicative or unnecessary briefing. *See, e.g.*, *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 912–13 (D.C. Cir. 1977) (granting intervention for movant to protect its own interests and where it "may also be likely to serve as a vigorous and helpful supplement to EPA's defense"). Thus, ONDA's participation in the litigation would not unduly delay or prejudice the rights of existing parties. *See* Fed. R. Civ. P. 24(b)(3) (in exercising discretion, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights"). For these reasons, ONDA satisfies the permissive intervention standard.

## <u>CONCLUSION</u>

For these reasons, ONDA respectfully moves the Court to grant ONDA's request for intervention as of right or, in the alternative, permissive intervention.

DATED this 20th day of December, 2017.  Respectfully submitted,

s/ Peter M. Lacy

_____

Peter M. Lacy
Oregon Natural Desert Association

Attorney for Applicant in Intervention-
Defendant